MILLER, Judge.
This is an action in tort by Mrs. Joyce Chapman, who alleges that on March 26, 1967 she became ill as a result of drinking half the contents of a bottle of “Fanta” containing a foreign or deleterious substance. The Coca-Cola Bottling Company of Lake Charles, Inc., manufacturer and distributor, and Travelers Insurance Company, its insurer, are made defendants. The case is on appeal from a judgment on the merits rendered in favor of defendant, the trial judge having held that plaintiff failed to prove there was any foreign substance in the bottle.
It was established that the Fanta drink was bottled by defendant, and purchased by plaintiff from a Coke machine at the V.F.W. Home located on Country Club Road in Lake Charles. Plaintiff immediately opened it and began drinking therefrom and did not notice anything peculiar to the taste. The purchase was made just prior to the start of some bingo games, and plaintiff visited with several friends on the way back to her table while sipping the Fanta drink. While playing bingo sometime later one of plaintiff’s friends directed her attention to a discoloration on the bottle, whereupon plaintiff raised the bottle and saw what she thought to be some substance clinging to the side and bottom of the bottle. Upon seeing this, plaintiff became nauseated and went to the restroom and vomited. She returned to play bingo and on two other occasions returned to the restroom and gagged. She did not leave the bingo game until it was over due to the fact that her huband was working the games and could not leave until the games were over. At the suggestion of her husband, plaintiff put the bottle in her purse and brought it home.
At home that night, she “drank some Maalox and took a headache tablet,” and finally got some relief. The next day she had an upset stomach. According to her testimony, she had an appointment with her family physician, Dr. Robert B. Clifton. Dr. Clifton testified that the appointment had nothing to do with the stomach condition, but was rather because of a hemorrhoid. However, while there plaintiff
“stated that last night she drank a grape soda and that after she had taken a portion or all of the carbonated drink and I don’t know which, she noticed that the bottom of the container was filled with cigarette butts. She started vomiting at that time, apparently. She did not * * I did not treat her for this and I don’t know what treatment she had for this complaint at the time.”
According to the Doctor, plaintiff was not nauseated during the March 27th visit and she was not complaining of nausea.
Mrs. Chapman explains that she did not tell Dr. Clifton that there were cigarette butts in the drink, but rather she stated that “it looked like cigarette tobacco.”
Plaintiff’s complaints following the night of March 26, 1967 were limited to the upset stomach that lasted for a week. It is noted however, that plaintiff did not mention this complaint when she had her next routine follow-up check with Dr. Irving Singer on April 7th. Furthermore, plaintiff testified that she never did throw up after the night of March 26th, but that when she would think of the experience of seeing the discoloration on the bottle of Fanta, a lump would come up in her throat.
*701 Dr. Irving Singer testified as an expert in the field of Internal Medicine. He treated plaintiff for a peptic ulcer beginning on February 7, 1967 and terminating on May 9th, 1967. Mrs. Chapman was seen as a patient by Dr. Singer March 10th, 17th, April 7th and May 9th. She never complained to him about the incident which is the subject of this suit. During Dr. Singer’s eight weeks of treatment ending April 7th, plaintiff gained eight pounds, and stated that she was sleeping well and felt that her energy was increasing. At the .May 9th visit, plaintiff stated that she had some pain for a period of about two days and returned to a milk diet with relief. She further stated she was having some trouble sleeping.
The pictures of the bottle are in evidence, and the bottle itself was delivered to Dr. B. E. Hankins, Ph.D in analytical chemistry, and professor of Chemistry at McNeese State College.
The three color photographs of the bottle show three areas where there is a brown or purple discoloration on the inside of the bottle. The topmost area is approximately one inch tall by about y^rd inch wide, located a little below the middle of the bottle. The second discoloration is on the side of the bottle about one inch above the bottom and is approximately l/jrd as large as the first spot. On the bottom of the bottle, there is a broken line of spots about 2y¿ inches long by inch wide following the outside edge of the interior portion of the bottom of the bottle, together with one spot about the size of a nickle, located near the middle of the bottom of the bottle.
Dr. Hankins testified that when he received the bottle it closely resembled the color photographs above described. He broke'the bottle and removed the dried films and “they didn’t appear brownish anymore, they appeared purple.” When he first looked at the dried films, it looked very much like cigarette paper, but when he scraped it loose, it was crystalline and there was no fibrous material. His spectroscopic analysis of the scrapings showed that they were identical to the known dry samples of sugar and grape ingredients in Fanta obtained from defendant. The only variation was the showing that the unknown disclosed a small amount of water.
The trial judges finding that plaintiff failed to prove the existence of a deleterious substance in the bottle is amply supported by the record.
Nevertheless, plaintiff-appellant argues that there can be no doubt but that the substance in this bottle is foreign, in that it was not a liquid drink, such as a person expects to find in a bottled soft drink when consuming it. Counsel points out that defendant is in the business of selling liquid drinks and not a sugar candy; that the crystallization in the bottle, as seen by Mrs. Chapman, was the cause of her injury.
Plaintiff relies on the case of Morrow v. Bunkie Coca-Cola Bottling Company, La.App., 84 So.2d 851, 852. But in that case and in the fourteen cases cited therein, plaintiff established the presence of foreign matter in the food or soft drink and that this foreign matter caused the food or drink to be impure.
In the instant case, the evidence establishes and plaintiff either admits or does not contest that the taste and purity of the drink was in no way affected by the discolorations found in the bottle. As stated in the other case cited by plaintiff, Broussard v. Liberty Mutual Insurance Company, La.App.3rd Cir. 210 So.2d 411, 413, the manufacturer is liable for defects producing “damages that were foreseen, or could easily have been foreseen.” Here, defendant has not breached his warranty that the product is safe for human consumption.
For these reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
Affirmed.